In the Matter of FINN's LIQUOR SHOP, INC., Petitioner, v. STATE LIQUOR AUTHORITY, Respondent.

First Department, November 7, 1968.

*Samuel B. Waterman* for petitioner.

*Howard Hertzberg* of counsel (*Hyman Amsel,* attorney), for respondent.

*Louis J. Lefkowitz* (*Samuel A. Hirshowitz* and *Brenda Soloff* with him on the brief), as Attorney-General of the State of New York, *amicus curiæ.*

STEVENS, J. P.   This is an article 78 proceeding in which petitioner seeks review of a determination of the State Liquor Authority (SLA) which suspended petitioner's license for 10 days, directed that a demand be made on petitioner and its surety on the bond of $1,000 and directed a letter of warning. The proceeding was transferred to this court pursuant to CPLR 7803 and 7804.   The central facts are not in dispute.

Petitioner was charged with a violation of subdivision 5 of section 100 of the Alcoholic Beverage Control Law for selling liquor on credit.   The second charge was a refusal to answer questions in an interview conducted by SLA January 18, 1967 in violation of subdivision (o) of rule 36 of the Rules of SLA (9 NYCRR 53.1 [o]).

At the hearing held on March 28, 1967, a preliminary motion to suppress certain evidence obtained by SLA investigators as having been obtained as the result of an illegal search on January 11, 1967, was denied as being made in the wrong forum. The Hearing Commissioner stated such a motion should be addressed to the Supreme Court.   Thereafter Mr. Rownin, an investigator for the SLA, testified that on January 11, 1967, he and Investigator Statruck visited the petitioner's liquor store at 64 West 9th Street.   Rownin identified himself to a Mr. Segal, who stated he was the manager of the premises and asked him " to allow me to inspect the premises."   Rownin testified Segal

said " go ahead, inspect the premises. I must be on duty in the front." Rownin went into the rear room of the premises, saw there a suburban coat hanging on a clotheshanger, searched the pocket of such coat " and came out with a batch of sales slips from the premises." The witness stated SLA had received a letter to the effect petitioner was selling liquor on credit and evidence of such sales would be found in a coat in the rear room. No search warrant was obtained.

About one or two hours later Martin Finn, an officer, director and stockholder of petitioner to whom the coat belonged, came into the store. In response to questioning by Rownin, Finn identified certain slips as representing sales on credit. Finn also signed a statement prepared by Rownin. Over objection the statement and slips were received in evidence.

Rownin also testified that on the 11th of January he took all slips found in the pocket — those identified as cash as well as credit sales. Finn's request that the cash sales slips be left was refused and he was directed by Rownin to " call me tomorrow and you'll come up and pick them up." Finn did not call the following day but subsequently an appointment was arranged for January 18, 1967. On that date Finn appeared with his attorney, was sworn in, but after consulting with his attorney Finn refused " to answer on the grounds it might tend to incriminate him." It is this refusal which forms the basis for the charge of a violation of subdivision (o) of rule 36. Admittedly there was no stenographer present at the time.

On cross-examination it developed that Rownin also looked through the desks in the rear room, although the books and records had been produced when requested.

In this proceeding petitioner urges there is no evidence to sustain the charge of sales on credit because the supporting evidence was obtained in violation of petitioner's constitutional rights, or was the fruit or result of such violation. SLA asserts there is substantial evidence to support the determination, and the penalty imposed was proper.

The *amicus curiæ* brief of the Attorney-General asserts the hearing officer properly refused to exclude the evidence and notes whatever might be the personal rights of Finn, the corporation cannot avail itself of the benefit of such personal right of privacy.

SLA has statutory authority " to inspect or provide for the inspection of any premises where alcoholic beverages are manufactured or sold " (Alcoholic Beverage Control Law (ABC), § 17, subd. 7; § 106, subd. 15). Inspection, as the term is generally used, involves a viewing or looking over to ascertain if the

premises conform to statutory directives (cf. ABC Law, § 106, subd. 9) and embraces as well the right to inspect books and records (subds. 12, 15; *Matter of Barski* v. *State Liq. Auth.,* 285 App. Div. 996). A search, on the other hand, involves an examination or seeking out, an exploration in an effort to dis-cover objects or material to be later utilized, presumably, in some form of judicial proceeding. It "implies a prying into hidden places for that which is concealed" (*People* v. *Dozier,* 52 Misc 2d 631, 633; cf. *United States* v. *Lee,* 274 U. S. 559, 563).

The right of the people to be secure in their persons, houses and effects against unreasonable searches and seizures has been too long recognized to require extended discussion (U. S. Const., 4th Amdt.; N. Y. Const., art. I, § 12; Civil Rights Law, § 8). The Fourth Amendment is enforcible against the States through the Fourteenth Amendment (*Ker* v. *California,* 374 U. S. 23, 30). It has been held that " except in certain carefully defined classes of cases, a search of private property without proper consent is ' unreasonable ' unless it has been authorized by a valid search warrant " (*Camara* v. *Municipal Ct.,* 387 U. S. 523, 528–529). It concluded that this was an unreasonable search.

Segal was the manager of the business only and his permission to inspect the premises could not and obviously did not confer a right to search the personal property of another lawfully and properly on the premises. This was not an instance where the investigator saw what was in plain sight, but rather involved the ferreting out and removing from the private personal property of Finn, without his consent, certain papers concealed in the pocket of his coat. Under the decisions there can be no doubt that there was an unconstitutional invasion of Finn's personal rights by the search. The more difficult question to be resolved is whether petitioner, a corporation, has standing to object to the procedure.

It has been held that a corporation is entitled under the Fourth Amendment to the protection against unlawful search and seizure (*Silverthorne Lbr. Co.* v. *United States,* 251 U. S. 385, 392) and that the protection may extend to commercial premises (*Mancusi* v. *DeForte,* 392 U. S. 364, 367).

In determining whether petitioner is here entitled to avail itself of the benefits of the prohibition certain facts may be re-enumerated in order to bring the issue into sharper focus. Finn was an officer, stockholder and director of petitioner which was the occupant and party in possession of the premises. The coat with its contents was in the custody and safekeeping of peti-tioner in a portion of the premises not open to the general public. By reason of the search and later utilization of the

proceeds of the search petitioner is or will be compelled to suspend its business and forfeit $1,000. As an officer of petitioner, presumably engaged in and dedicated to advancing the interests of petitioner, Finn left his coat and its contents on the premises of petitioner. By reason of the illegal search petitioner will suffer a severe loss detrimental to its interests. Petitioner's protection was infringed by the warrantless search and seizure. Balancing the need for the search against the invasion and recalling that the SLA had prior information, it not appearing that this was an emergency, no reason is advanced why a warrant could not have been obtained. Finn was reasonably entitled to expect his personal clothing to be free of a warrantless governmental intrusion (cf. *Katz* v. *United States,* 389 U. S. 347). The property taken was that of petitioner, though in the custody of Finn, and to allow its use here is to allow respondent to profit by its own wrong. It is concluded that petitioner has standing to object to the search and that the evidence should have been excluded (cf. *Matter of Leogrande* v. *State Liq. Auth.,* 25 A D 2d 225, revd. on other grounds 19 N Y 2d 418).

As to the second charge, the privilege against self incrimination is personal and its use available to natural persons only (*Campbell Painting Corp.* v. *Reid,* 392 U. S. 286, 289; *Hale* v. *Henkel,* 201 U. S. 43, 74). However, the knowledge used by the SLA was gained as the result of an illegal search, and excluding the fruit of the search would have rendered pointless and unnecessary the subsequent interrogation. Moreover, the underlying wrong tainted the later attempted interrogation. Nor was there any waiver for timely objection was made to the use of the material found.

Words ordinarily and generally used are to be given their ordinary meaning, and an enforced or different construction is generally not warranted. The permission granted to inspect the premises, bearing in mind that inspection under the statute (ABC Law) is designed to assure compliance with the statutory mandates, did not embrace a consent to a search of private personal articles. Even the investigator testified this was the first time that he had followed such a course of action though no doubt is entertained the investigator had conducted numerous inspections in the performance of his duties.

The determination appealed from should be annulled, with costs.

EAGER, TILZER, McGIVERN and RABIN, JJ., concur.

Determination unanimously annulled, with $50 costs and disbursements to the petitioner.