Petition of the **COLONNADE CATERING CORP.,** Plaintiff-Appellee,

v.

**UNITED STATES of America,**
**Defendant-Appellant.**

**No. 310, Docket 32817.**

United States Court of Appeals
Second Circuit.

Argued Feb. 12, 1969.

Decided March 26, 1969.

poration in respect to such stock, *except the right to receive payment for the*

*value thereof * * *."* [Emphasis supplied.]

198

Jerome M. Stember, New York City, for appellee.

Charles Ruff, Atty., Dept. of Justice, Washington, D. C. (Joseph P. Hoey, U. S. Atty., David P. Steinmann, Asst. U. S. Atty., Eastern Dist. of New York, and Richard L. Mays, Atty., Dept. of Justice, Washington, D. C., on the brief), for appellant.

Before ANDERSON and FEINBERG, Circuit Judges, and MANSFIELD, District Judge.*

MANSFIELD, District Judge:

This appeal is taken by the Government pursuant to 18 U.S.C. § 3731 from an order of the district court granting the petition of appellee Colonnade Catering Corporation ("Colonnade") for the suppression and return of 53 bottles containing alcoholic spirits and two funnels seized by agents of the Internal Revenue Service. We conclude that the search and seizure of the property was reasonable and accordingly reverse the decision below.

On the afternoon of Saturday, May 18, 1968, three Special Investigators of the Internal Revenue Service, accompanied by a Nassau County policeman, entered

* Of the Southern District of New York, sitting by designation.

Colonnade's premises at approximately 4:00 P.M. Colonnade, which holds a New York State liquor license, operates a catering establishment, and at the time there was a party in progress in its ballroom where liquor was being served. The purpose of their visit was to determine whether Colonnade possessed any liquor bottles that had been refilled or altered, which would constitute a violation of both federal tax laws, 26 U.S.C. § 5301(c) and New York's Alcohol Beverage Control Law, McKinney's Consol. Laws, c. 3–B, § 107–a and Rule 4 of State Liquor Authority.[1] One of the agents had attended a party there on the previous Saturday and had observed what he thought were resealed bottles of liquor.

After looking around the ballroom with the manager's consent, the agents inspected the basement of the building without result and stated that they wished to enter a locked liquor storeroom located about 75 feet from the entrance to the ballroom. They were informed that Colonnade's president was the only person with authority to unlock the door; he was called to the scene but refused to do so. Instead he asked the agents if they possessed a warrant and, upon being told by the area supervisor of the Alcohol Tax Unit (who had meanwhile arrived) that according to statute

they did not need one, he refused to unlock the door, whereupon the agents broke the lock, entered, and seized the liquor and funnels which are the subject of this petition.

Upon Colonnade's motion to suppress the evidence pursuant to Rule 41(e), F.R.Cr.P.,[2] the district court held that the warrantless search and seizure was in derogation of the right of Colonnade and its officers "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S.Const. Amend. 4. In his opinion Judge Weinstein concluded that the Supreme Court's recent decisions in Camara v. Municipal Court of City and County of San Francisco, 387 U.S. 523, 530, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967) and See v. City of Seattle, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967), extending Fourth Amendment protection to administrative searches of the type there under attack, including a search of a commercial warehouse, precluded a warrantless search of Colonnade's liquor storeroom. The Government contends that the warrantless search in this case is to be distinguished from those before the Supreme Court there, and that search without a warrant was permissible here because it was authorized by statute, 26 U.S.C. §§ 5146(b) and 7606 (a),[3] and the essential governmental

---

1. The federal statute provides in pertinent part that:

    "*Refilling of liquor bottles.*—No person who sells, or offers for sale, distilled spirits, or agent or employee of such person, shall—

    "(1) place in any liquor bottle any distilled spirits whatsoever other than those contained in such bottle at the time of stamping under the provisions of this chapter; or

    "(2) possess any liquor bottle in which any distilled spirits have been placed in violation of the provisions of paragraph (1); or

    "(3) by the addition of any substance whatsoever to any liquor bottle, in any manner alter or increase any portion of the original contents contained in such bottle at the time of stamping under the provisions of this chapter; or

    "(4) possess any liquor bottle, any portion of the contents of which has

been altered or increased in violation of the provisions of paragraph (3);
* * *."

2. Rule 41(e), F.R.Cr.P., provides in pertinent part that:

    "A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property and to suppress for the use as evidence anything so obtained on the ground that (1) the property was illegally seized without warrant * * *. If the motion is granted the property shall be restored unless otherwise subject to lawful detention and it shall not be admissible in evidence at any hearing or trial."

3. These sections provide:
26 U.S.C. § 5146(b)
    "*Entry of premises for inspection.*—The Secretary or his delegate may enter

purpose to be served would be frustrated if a warrant were required. See Peeples v. United States, 341 F.2d 60 (5th Cir.), cert. denied, 380 U.S. 988, 85 S.Ct. 1362, 14 L.Ed.2d 280 (1965); United States v. Sessions, 283 F.Supp. 746 (N.D.Ga.1968) (following *Peeples* after the decisions in *Camara* and *See*); accord: United States v. Duffy, 282 F.Supp. 777 (S.D. N.Y.1968) (dictum). Appellant further argues that in any event Colonnade, by engaging in the retail liquor business, impliedly consented to warrantless inspections of its business premises.

■ The first question to be decided is whether the search here must be barred on the authority of *Camara* and *See,* which dealt with the legality of warrantless administrative searches conducted in aid of municipal code enforcement. In those decisions the Supreme Court concluded that where broad inspection authority is granted by statute to an administrative officer, the warrant procedure with its individualized review is required to assure that reasonable limits will be imposed upon the exercise of such authority in each instance and to protect the occupant against excessive intrusion upon his privacy, since he cannot be expected to know the lawful limits of the inspector's power. Furthermore, since the need to search in some cases might be questionable, a particular search might be unreasonable. However, the Supreme Court limited its decision to "administrative searches of the kind at issue here," *Camara, supra,* 387 U.S. at 534, 87 S.Ct. at 1733 (i. e., those conducted pursuant to broad grants of authority). Justice White, speaking for the majority in both cases, further observed that warrantless searches are permitted in "certain carefully defined classes of cases," and stated that the question of whether to require a warrant must depend "in part upon whether the burden of obtaining a warrant is likely to frustrate the governmental purpose behind the search," *Camara, supra* at 533, 87 S.Ct. at 1733. With respect to a search of business premises, such as that involved here, the Court went further:

> "We do not in any way imply that business premises may not reasonably be inspected in many more situations than private homes, nor do we question such accepted regulatory techniques as licensing programs which require inspections prior to operating a business or marketing a product." *See, supra,* 387 U.S. at 545–546, 87 S. Ct. at 1740.

Thus the door was left open to warrantless administrative searches in those special situations where protection against excessive intrusion upon the individual's privacy could be reasonably assured and the objectives demanded by the public interest would be frustrated if the inspectors were required to obtain warrants. We believe that for several reasons the limited search of a liquor licensee's storeroom by Internal Revenue Service agents falls within the limited exception contemplated by the Supreme Court. In the first place, the statutory grants authorizing the administrative searches in *Camara* and *See,* unlike those here, were extremely broad in scope. For instance, § 503 of the San Francisco City Housing Code, which was the ordinance under consideration in *Camara,* gave city inspectors the power to enter "any building, structure, or premises in the City to perform any duty imposed upon them by the Municipal Code." This included the duty (among others) of determining through periodic inspection

---

during business hours the premises (including places of storage) of any dealer for the purpose of inspecting or examining any records or other documents required to be kept by such dealer under this chapter or regulations issued pursuant thereto and any distilled spirits, wines, or beer kept or stored by such dealer on such premises."

26 U.S.C. § 7606(a)
  "*Entry during day.*—The Secretary or his delegate may enter, in the daytime, any building or place where any articles or objects subject to tax are made, produced, or kept, so far as it may be necessary for the purpose of examining said articles or objects."

whether conditions existed in "residential buildings, dwelling units and neighborhoods" that might be found to be "dangerous, substandard, unsanitary or obsolete and deficient," San Francisco Housing Code § 101; Part III, § 86, San Francisco Municipal Code. In *See,* which involved an attempted inspection of a locked commercial warehouse, the authority was only slightly more restricted. The relevant statute provided for entry by the Fire Chief into buildings other than dwellings "as often as may be necessary for the purpose of ascertaining and causing to be corrected any conditions liable to cause fire, or any violations of the provisions of this Title, and of any other ordinance concerning fire hazards," Seattle Fire Code § 8.01.050, 387 U.S. at 541, 87 S.Ct. at 1738. These expansive grants of authority would permit an inspector, unless a warrant was required, to roam at will through any portion of a dwelling house, in one case, or of commercial property, in the other, without the occupant or owner being able to determine the need for the inspection, its purpose and its lawful limits. Theoretically the inspection might seek to uncover any one or more of innumerable possible violations, such as faulty wiring, plumbing, foundations, beams, or the like. Without the safeguard of the warrant machinery, the inspectors could conduct a "general search" of the very type proscribed by the Fourth Amendment. As Justice White noted, "broad statutory safeguards are no substitute for individualized review," 387 U.S. at 533, 87 S.Ct. at 1733.

In contrast to such broad delegation of inspection authority, the statutory grants of inspection power here under review are carefully defined and narrowed to the point where they grant little, if any, more authority than that which would be extended in a warrant issued by a magistrate after review.

The sole authority granted is permission, during business hours, to enter the premises of a dealer in liquor who is subject to a special federal alcohol tax, 26 U.S.C. § 5121(a),[4] for the limited purpose (not involved here) of inspecting those "records or other documents required to be kept by such dealer under this chapter" and the further limited purpose of inspecting "any distilled spirits, wines, or beer kept or stored by such dealer on such premises," 26 U.S.C. § 5146(b), or to enter "any building or place where any articles or objects subject to tax are made, produced, or kept, so far as it may be necessary for the purpose of examining said articles or objects," 26 U.S.C. § 7606(a). The agent in the field is not, by virtue of these statutory provisions, given authority to conduct a general search of the premises; he is limited to the place where the liquor is kept and to inspection of specific objects, i. e., the alcoholic beverages. The scope of permissible intrusion without a warrant is thus carefully restricted and it does not entitle the agent to dispense with a warrant before searching the dwelling place of the owner of a retail liquor establishment, United States v. Frisch, 140 F.2d 660 (5th Cir. 1944), or clothing belonging to such a person, cf. Finn's Liquor Shop, Inc. v. State Liquor Authority, 31 A.D. 2d 15, 294 N.Y.S.2d 592 (1st Dept. 1968).

The limited search permitted to be made by an alcohol tax inspector is also distinguishable in another significant respect from the searches reviewed in *Camara* and *See.* As was pointed out by Justice White, broad statutory authorizations of the type there under consideration pose the danger that in a confrontation with an administrative inspector claiming statutory authority to enter and inspect for possible housing or fire code violations, the homeowner or business man may have "no way of knowing the lawful limits of the inspector's power

4. This section provides that:
"*Retail dealers in liquor.*—Every retail dealer in liquors shall pay a special tax of $54 a year. * * * "

to search, and no way of knowing whether the inspector himself is acting under proper authorization." 387 U.S. at 532, 87 S.Ct. at 1732. Such a risk, in the type of inspection involved here, is minimal. Dealers in liquor, unlike homeowners or businessmen conducting less specialized activities, are engaged in a heavily regulated business.[5] They are usually well aware of the regulations to which they are subject, and are undoubtedly familiar with the nature and limits of the inspector's authority. Cf. Zap v. United States, 328 U.S. 624, 66 S.Ct. 1277, 90 L.Ed. 1477 (1946). In fact it is their very knowledge of the possibility of such inspections that make the inspection program an effective means of enforcing the tax law. Such sophisticated licensees, when faced with an inspector whose authority to search is carefully restricted and circumscribed by regulations known to all, are undoubtedly acquainted with the limits upon the agent's inspection rights.

For the foregoing reasons the imposition of a requirement that alcohol tax inspectors obtain warrants before carrying out the specifically defined inspection authorized by statute would serve no useful purpose in protecting the Fourth Amendment rights of the liquor dealer. Those rights are already protected by the restrictions contained in the statute itself. We are not dealing here with "area" or "general" searches of the type authorized by municipal codes, and there is no need to utilize the warrant machinery as a means of establishing standards for protection against unwarranted intrusions possible under such codes. Here the area eligible for inspection is clearly and narrowly defined; the purpose is relevant; the scope is limited; and all of these aspects are well known to the operator of the premises being inspected. Nothing of consequence therefore would be achieved through individualized review by a magistrate. In the proper exercise of his discretion, the magistrate would be compelled to issue a warrant as a matter of course, duplicating the limited authority already granted by statute. In short, the statute here under consideration is the equivalent of a warrant.

There remains the question of whether the public interest in alcohol tax inspections would be hindered or prejudiced in any way by warrant procedure, even if all that it involved were the automatic issuance of "rubber stamp" warrants. The public interest in such periodic inspections is hardly open to question. It derives from the potentially great loss to the national revenue which would result from ineffective enforcement of the alcohol tax law. In the fiscal year 1966, for instance, over $3 billion was collected in excise taxes on distilled spirits. The

5. All states which permit the retail sale of liquor by private persons license this activity. A 1960 survey showed that, including the District of Columbia, 33 states had such licensing programs for sales at retail for consumption off the premises, while 17 operated under the state monopoly system. H. Levin, Economic and Regulatory Aspects of Liquor Licensing, 112 U.Pa.L.Rev. 785, Table 1 at 786 (1964) [Derived from Joint Committee of the States to Study Alcoholic Beverage Laws, Alcoholic Beverage Control (rev. ed. 1960)]. No state permits the sale of alcoholic beverages for consumption on the premises without a license. The mass of state and federal legislation regulating this industry is collected and annotated in CCH Liquor Control Law Rep. (9 vols.).

The regulatory laws of many states, including those of New York, to which Colonnade is subject, provide for warrantless inspections of the type authorized by the federal statutes here. E. g., 3 McKinney's Consol. Laws of New York Ann. § 106(15); 35 Alaska Compiled Laws Ann. § 35–4–15(6); Ark.Statutes, Ch. 48, § 48–203(d); 30 Conn.Gen.Statutes Ann. § 30–6; Fla.Statutes, Ch. 562, § 562.031, F.S.A.; 43 Ill.Ann.Statutes § 112, subd. 2; Kansas Statutes Ann. Ch. 41, § 41–209(5); 26 La.Rev.Statutes § 378; 2B Ann.Code of Md. § 190; Ann. Laws of Mass. Ch. 138, § 24; Rev. Statutes of Neb. Ch. 53, § 53–117; 33 N.J.Statutes Ann. § 33:1–23; 37 Okl. Statutes § 514(9); 47 Penn.Statutes Ann. § 2–209; 7 Vt.Statutes Ann. § 564.

Annual Report of the Commissioner of Internal Revenue (1967), p. 117. A common method of evading such taxes by retailers who sell liquor by the drink is the illegal refilling of bottles in violation of 26 U.S.C. § 5301(c). The goal of the inspection is to deter such violations. An important factor in achieving that goal is the element of surprise. As experience and efforts to enforce the Eighteenth Amendment so frequently revealed in the 1920's, the liquor dealer-violator who receives an advance tipoff of an imminent inspection destroys the evidence before the agent arrives on the scene. Although the dealer knows that he may be visited by inspectors, the effective implementation of the law depends upon his being kept in the dark as to the precise time of the visit. If, as the Supreme Court indicated in *Camara,* "warrants should normally be sought only after entry is refused," 387 U.S. at 539, 87 S.Ct. at 1736, the cat would be let out of the bag in most instances where a violation was being committed and the essential governmental purpose would be frustrated. Warned of the inspection the dealer would quickly destroy or otherwise dispose of the contents of the illegally filled bottles before the inspector returned with his warrant. In this respect the result would differ radically from that presented in municipal code enforcement of the type at issue in *Camara* and *See,* where a delay attendant upon obtaining a warrant might be helpful in achievement of the public interest goals, since the violator might be induced to eliminate the hazard before the inspector's return. Here the effect will be to enable the dealer to escape payment of taxes constituting an essential part of the revenue; and it may be expected that if such a dealer could escape detection, he would repeat the violations with impunity.

We further conclude that an inspection of the type here under review may be lawfully conducted without a warrant for the reason that the retail liquor dealer, upon obtaining his state license and his federal occupational stamp, enters this highly regulated business with a full awareness and expectation that his liquor supply, including that located in "places of storage," 26 U.S.C. § 5146(b), will be inspected by representatives of the Treasury Department. Whether his conduct in entering the business upon such a condition be labelled an implied consent to such an inspection, cf. Zap v. United States, 328 U.S. 624, 66 S.Ct. 1277 (1946), or a limited dedication to public inspection of that portion of his premises in which his liquor supply is stored, it is clear that he anticipates that such an inspection will be made and he is well aware of the need for such inspection. The situation is substantially the same as if the dealer had knowingly entered into a contract waiving his right to privacy in those areas where he keeps and sells alcoholic beverages. Such a waiver with respect to subject matter in which the public has a special interest would be enforceable, Zap v. United States, 328 U.S. 624, 66 S.Ct. 1277 (1946); see Shapiro v. United States, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948), and is to be distinguished from unrelated waivers, cf. Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1966); Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967), which have been nullified on the ground that such conditions would constitute an unreasonable forfeiture of the citizen's constitutional rights. It does not strike us as unreasonable to require that a liquor dealer, as a condition to entry into a business in which the Government has such a direct and special interest, submits himself to statutory authority to the extent of permitting warrantless inspection of alcoholic beverages on his business premises. In the face of such extensive regulatory measures, the dealer can hardly contend with any degree of conviction that he has a "reasonable expectation of freedom from governmental intrusion" into his bar and liquor storage space, Mancusi v. DeForte, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968); Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). In this respect his status differs sharply

from that of the homeowner in *Camara* or the operator of a commercial warehouse in *See,* neither of whom could have been expected to have familiarity with the city inspectors' inspection powers under the broad municipal codes there involved. In contrast, the liquor dealer is well aware of the limits of the alcohol tax inspector's authority. To require him to execute an express advance agreement authorizing periodic inspections without warrant would be a superfluous gesture in view of their general awareness of the likelihood of periodic surprise inspections. His situation is comparable to that of the traveler who anticipates a border search of his baggage upon entry into the United States, 19 U.S.C. §§ 1467, 1496, 1582, a coal mine operator who expects to be inspected by the Secretary of Interior, 30 U.S.C. §§ 451–454, or an air carrier which is aware of the prospect that its lands, buildings and equipment will be inspected by the C. A. B., 49 U.S. C. § 1377. The constitutionality of statutes authorizing such limited warrantless searches in the public interest is generally recognized, Landau v. United States Attorney for Southern District of New York, 82 F.2d 285 (2d Cir. 1936), and the additional imposition of warrant procedure would not serve any useful purpose.[6]

Having concluded for the foregoing reasons that the search of Colonnade's liquor storeroom conducted by the representatives of the Internal Revenue Service pursuant to 26 U.S.C. §§ 5146(b) and 7606(a) was not rendered unreasonable by the fact that it was conducted without a warrant, we turn to Colonnade's contention that the decision below should be affirmed on the ground that the search was unreasonable.

■■■■ Colonnade contends that two factors in this case compel affirmance. First, it is argued that the fact of the agents' forcible entry into the liquor storeroom rendered the search "per se" unlawful. However, a search reasonably conducted pursuant to a search warrant is not rendered unreasonable by the use of force in its execution, if the prerequisite of announcement of authority and purpose is fulfilled, 18 U.S.C. § 3109; the same standard applies to arrests without a warant, Sabbath v. United States, 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968), and we see no rational basis for applying a different standard of conduct to warrantless searches. In short, where it is reasonable to conduct a search without a warrant, it is accordingly reasonable to use whatever minimal force is necessary to carry out the search, provided, as is the case here, that the authority of the agent to make the search and the purpose of the entry is announced, and consent to entry is not forthcoming. There would be no point in holding warrantless searches by alcohol tax inspectors to be reasonable if the owner of the premises could render them unreasonable by withholding his consent and compelling the agent to use the minimum amount of force necessary to accomplish his objective.

Second, it is strenuously urged by Colonnade that the search here was unreasonable because the Internal Revenue

---

6. Many other federal statutory provisions permit warrantless inspections. E. g., 42 U.S.C. § 2051 (inspection of places where research in atomic energy is performed by A. E. C.) ; 46 U.S.C. § 408 (inspection of vessel boiler plates at manufacturer's plant by Coast Guard) ; 21 U.S.C. § 603 et seq. (inspection of meat and meat products by Secretary of Agriculture) ; 42 U.S.C. § 262 (inspection of establishments engaged in the preparation of certain kinds of drugs by the Public Health Service) ; 15 U.S.C. § 1270 (inspection of any factory or warehouse in which "hazardous substances" are manufactured, processed, packed, or held for introduction into commerce and of any vehicle being used to transport or hold such substances by the Secretary of Health, Education and Welfare) ; 21 U.S.C. § 157 (inspection of any establishment engaged in the production of certain types of drugs for the treatment of animals by the Secretary of Agriculture) ; 21 U.S.C. § 374 (inspection of any establishment where food, drugs, devices or cosmetics are manufactured, processed, packed or held for introduction into commerce by the Secretary of Health, Education and Welfare).

Service had some basis for believing that evidence of a violation of 26 U.S.C. § 5301(c) could be found on the premises. Thus, it argues, although a routine "administrative" search might be reasonable, the existence of some ground for the search renders it a search pursuant to a "criminal investigation" for which a warrant should be required.[7] In point of fact, of course, any inspection or search conducted by an agent for possible alcohol tax violations could be characterized as a search pursuant to a criminal investigation. Whether or not he has cause to believe that evidence of any such violations will be found, the purpose of the inspection will be to determine, by testing the contents of liquor bottles, whether the business is being conducted lawfully or unlawfully.

Acceptance of defendant's contentions would place the agent in the position of being authorized to conduct a warrantless search only when he had no reason to suspect a possible violation. If, as *Camara* suggests, the withholding of consent forms a basis for a reasonable belief that evidence of a violation can be found, see p. 203 *supra*, a warrant would be required whenever consent was not given, and the public interest in reasonable warrantless searches would be frustrated. We conclude, therefore, that warrantless searches pursuant to the limited statutory authority of 26 U.S.C. §§ 5146(b) and 7606(a) for the purpose of investigating possible violations of 26 U.S.C. § 5301(c) are reasonable within the meaning of the Fourth Amendment, whether or not there is a reasonable basis for believing that evidence of such violations may be found on the premises searched.

Accordingly, the decision of the lower court is reversed and the case remanded to the district court for the purpose of entering an order denying the petition of Colonnade for the suppression and return of property.

---

**7.** Violation of 26 U.S.C. § 5301(c) is punishable by a fine of not more than $1,000, or imprisonment for not more than one year, or both. 26 U.S.C. § 5606.