Salvatore **TERRACIANO**, Petitioner,

v.

Ernest **MONTANYE** Superintendent Attica Correctional Facility

and

Carl F. Draxler, Sheriff of Chemung County, Respondents.

No. Civil 1972–498.

United States District Court,
W. D. New York.

July 23, 1973.

Lipsitz, Green, Fahringer, Roll, Schuller & James, Buffalo, N. Y. (Michael J. Brown, Buffalo, N. Y., of counsel), for petitioner.

Louis J. Lefkowitz, Atty. Gen. (Bedros Odian, Buffalo, N. Y., of counsel), for respondent Montanye.

John F. O'Mara, Dist. Atty. of Chemung County (Ransom P. Reynolds, Jr., Elmira, N. Y., of counsel), for respondent Draxler.

CURTIN, District Judge.

■ This case involves a petition for a writ of habeas corpus filed by a state defendant who stands convicted, but who has not yet begun to serve his sentence because he was released by this court on bail pending determination of the petition. Petitioner Salvatore Terraciano was convicted upon his entry of a plea of guilty of the crimes of criminal possession of a dangerous drug, second degree, and criminally selling a dangerous drug, second degree. Prior to entry of the plea, he had moved to suppress the use as evidence of certain records taken from his store, but the motion had been denied. Pursuant to Section 813–c of the former New York Code of Criminal Procedure, he had appealed his conviction, claiming that it was error to deny his suppression motion. The conviction was affirmed by the Appellate Division, Third Department, People v. Terraciano, 39 A.D.2d 1005, 333 N.Y.S.2d 903 (3d Dept. 1972), and leave to appeal was denied. The petitioner having exhausted his available state remedies as required by 28 U.S.C. § 2254(b), his petition is properly before this court. *See* United States ex rel. B. v. Shelly, 430 F.2d 215, 217 (2d Cir. 1970); United States ex rel. Molloy v. Follette, 391 F.2d 231, 232 (2d Cir.), cert. denied, 391 U.S. 917, 88 S.Ct. 1812, 20 L.Ed.2d 658 (1968); United States ex rel. Rogers v. Warden, 381 F.2d 209, 212–215 (2d Cir. 1967).

The petitioner claims that the records taken from his store were seized in violation of his rights under the fourth amendment and that consequently the state trial court erred in not suppressing their use. The following facts relating to this claim are revealed by the transcript of the suppression hearing conducted by the state trial court.

The petitioner is a pharmacist licensed under the laws of the State of New York and, at the time of the events in question, owned and operated the Windsor Pharmacy in the Village of Horseheads, New York. On April 10, 1969 Senior Investigator Michael Capozzi of the New York State Police entered the petitioner's store, walked behind the drug counter, showed his credentials and said he wanted to examine the petitioner's records. The petitioner said, "Just a minute," and attempted to call his attorney, saying he was not sure that Capozzi had the right to look at the records. Capozzi then left, but returned the next day with a warrant for the petitioner's arrest on a charge of obstructing governmental administration. Defendant was arraigned in the Horseheads Village Court on that charge.

On April 14, Capozzi returned in the company of Senior Narcotic Investigator Theodore Kowitt of the New York State Narcotics Control Bureau. Capozzi introduced Kowitt and left. Kowitt presented his credentials and gave the petitioner the warnings set forth in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Thereupon the petitioner called his attorney, who arrived after Kowitt had begun his inspection of records pertaining to narcotic, depressant and stimulant drugs maintained by the petitioner. Neither the petitioner nor his attorney explicitly objected to Kowitt's inspection, the petitioner explaining at the hearing that he did not want to get into more trouble and subject himself to another arrest by again refusing access to his records. Kowitt's inspection took two days and, at its conclusion, he removed from the petitioner's store and took with him certain records for which he gave the petitioner a receipt.

Kowitt's inspection was not conducted pursuant to a search warrant. At the hearing he testified that it was made under the authority granted by Sections 3350(2) and 3390(2) of the New York Public Health Law, McKinney's Consol. Laws. c. 45. These sections provide that

investigators "shall have access at all times to all orders, prescriptions or records to be kept under [the laws regulating activities involving narcotic, depressant and stimulant drugs]."

■ Administrative inspections of commercial establishments are subject to the strictures of the fourth amendment. *See* See v. City of Seattle, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967).[1] Consequently an inspection must be conducted pursuant to a search warrant unless it occurs under circumstances deemed to justify a warrantless inspection.

■ One such circumstance is a valid consent to the inspection. *See, e. g.,* United States v. Thriftimart, Inc., 429 F.2d 1006 (9th Cir.), cert. denied, 400 U.S. 926, 91 S.Ct. 188, 27 L.Ed.2d 185 (1970). Although a "manifestation of assent, no matter how casual," *Id.* at 1010, may suffice to constitute consent to an administrative inspection, consent is not established by a mere "acquiescence to a claim of lawful authority." Bumper v. North Carolina, 391 U.S. 543, 549, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968). See United States v. Kramer Grocery Co., 294 F.Supp. 65, 67–68 (E. D.Ark.), aff'd, 418 F.2d 987 (8th Cir. 1969). In the instant case the respondents do not contend that the petitioner consented to the inspection of the records at his store on April 14, 1969

and, under the facts set forth above, such a contention would be rejected. In light of the petitioner's arrest on a charge of obstructing governmental administration following his refusal to permit an inspection on April 10, his failure to object to the inspection on April 14 could not be anything but "acquiescence to a claim of lawful authority." *See* United States v. Kramer Grocery Co., *supra.*

■ Even in the absence of consent, an administrative inspection may be made without a warrant if the business searched is one in which there is a legitimate public interest in close regulation and if the search is conducted under the authority of a statute meeting the requirements set forth in United States v. Biswell, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972). In *Biswell,* the Supreme Court upheld a warrantless search made pursuant to a federal statute permitting entry "during business hours [of] the premises (including places of storage) of [regulated firearms businesses] for the purpose of inspecting or examining (1) any records or documents required to be kept . . . and (2) any firearms or ammunition kept or stored . . . at such premises." 18 U.S.C. § 923(g). The search was lawful despite the absence of a warrant for it was made "[i]n the context of a regulatory inspection system of business premises which is carefully limited in time,

---

1. Pointing to Shapiro v. United States, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948), the respondents contend that, because the records inspected at the petitioner's store were records the law required him to keep, they were subject to inspection without regard to restrictions imposed by the fourth amendment in other contexts. Although *Shapiro* has been cited in support of this proposition, *see* Cooper's Express, Inc. v. Interstate Commerce Commission, 330 F.2d 338, 340 (1st Cir. 1964), neither *Shapiro* nor Davis v. United States, 328 U.S. 582, 66 S.Ct. 1256, 90 L.Ed. 1453 (1946), appear to justify it. In *Shapiro* the Supreme Court held that, because certain documents were required by law to be kept, they became public documents, the production of which *in compliance with a subpoena* did not

violate the fifth amendment privilege against self-incrimination. In short, no fourth amendment question was presented in *Shapiro. Davis,* the facts of which are somewhat similar to those in the instant case, has subsequently been interpreted as turning on the issue of consent. *See* Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); Mancusi v. DeForte, 392 U.S. 364, 372 n. 11, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968); See v. City of Seattle, 387 U.S. 541, 545 n. 7, 87 S.Ct. 1737, 18 L.Ed. 2d 943 (1967).

Even if the proposition advanced by the respondents once stated the applicable law, it appears that in light of See v. City of Seattle, *supra,* it no longer does so. See United States v. Stanack Sales Co., 387 F.2d 849, 852 (3d Cir. 1968).

place and scope. . . . " 406 U.S. at 315, 92 S.Ct. at 1596.

The rationale implicitly underlying the *Biswell* decision is stated in Colonnade Catering Corp. v. United States, 410 F.2d 197 (2d Cir. 1969), rev'd, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970):

> In contrast to such broad delegation of inspection authority [as that involved in *See, supra*], the statutory grants of inspection power here under review [26 U.S.C. §§ 5146(b) and 7606(a)] are carefully defined and narrowed to the point where they grant little, if any, more authority than that which would be extended in a warrant issued by a magistrate after review. . . .
>
>    \*    \*    \*    \*    \*    \*
>
> . . . the imposition of a requirement that alcohol tax inspectors obtain warrants before carrying out the specifically defined inspection authorized by statute would serve no useful purpose in protecting the Fourth Amendment rights of the liquor dealer. Those rights are already protected by the restrictions contained in the statute itself. We are not dealing here with "area" or "general" searches of the type authorized by municipal codes, and there is no need to utilize the warrant machinery as a means of establishing standards for protection against unwarranted intrusions possible under such codes. Here the area eligible for inspection is clearly and narrowly defined; the purpose is relevant; the scope is limited; and all of these aspects are well known to the operator of the premises being inspected. Nothing of consequence therefore would be achieved through individualized review by a magistrate. In the proper exercise of his discretion, the magistrate would be compelled to issue a warrant as a matter of course, duplicating the limited authority already granted by statute. In short, the statute here under consideration is the equivalent of a warrant. 410 F.2d at 201, 202.

■ ■ The practice of pharmacy, and particularly the sale of drugs, is an activity in which there is a legitimate public interest in close regulation and which is in fact pervasively regulated. *See* United States v. Montrom, 345 F.Supp. 1337, 1340 (E.D.Pa.1972); McKaba v. Board of Regents of the University of the State of New York, 30 A.D.2d 495, 498, 294 N.Y.S.2d 382 (3d Dept. 1968). Consequently, a search made pursuant to "a regulatory inspection system of business premises which is carefully limited in time, place and scope" would be lawful under *Biswell*. Sections 3350(2) and 3390(2) of the New York Public Health Law, allowing "access at all times to all orders, prescriptions or records required to be kept," are not so limited, however. Unlike the statute in *Biswell*, they are not carefully limited in time and place and therefore are not the functional equivalent of a warrant. Their existence does not provide a lawful basis for the inspection involved here, and one must judge the inspection under ordinary fourth amendment standards. As was stated in Colonnade Catering Corp. v. United States, 397 U.S. 72, 77, 90 S.Ct. 774, 777, 25 L.Ed.2d 60 (1970), "[w]here [the legislature] has authorized inspection but made no rules governing the procedure that inspectors must follow, the Fourth Amendment and its various restrictive rules apply." The court finding no ground to justify the inspection among the exceptions to the warrant requirement of the fourth amendment, the inspection must be held to have been illegal.

The petition for a write of habeas corpus is granted.

So ordered.