493 F.2d 682
 UNITED STATES ex rel. Salvatore TERRACIANO, Petitioner-Appellee,
v.
Earnest MONTANYE, Superintendent, Attica Correctional
Facility, and Carl F.Draxler, Sheriff of Chemung
County, Respondents-Appellants.
 No. 509, Docket 73-2382.
 United States Court of Appeals, Second Circuit.
 Argued Feb. 20, 1974.
Decided March 14, 1974.
 
 D. Bruce Crew, III, Acting Chemung Co. Dist. Atty. (Ransom P. Reynolds, Jr., Elmira, N.Y., of counsel), for respondents-appellants.
 Michael J. Brown, Buffalo, N.Y. (Herald Price Fahringer, Paul J. Cambria, Jr., Lawrence A. Schulz, and Lipsitz, Green, fahringer, Roll, Schuller & James, Buffalo, N.Y., of counsel), for petitioner-appellee.
 Before LUMBARD, FRIENDLY and TIMBERS, Circuit Judges.
 FRIENDLY, Circuit Judge:
 
 
 1
 Petitioner, Salvatore Terraciano, a licensed pharmacist, was the owner and operator of the Windsor Pharmacy in Horseheads, Chemung County, N.Y. On April 10, 1969, one Michael Capozzi, a state police officer, entered the pharmacy during business hours, showed his credentials and stated that he wished to examine Terraciano's records. When Terraciano declined to allow this until he had consulted his attorney, Capozzi departed, but returned the next day with four state troopers and a warrant for Terraciano's arrest on a charge of obstructing governmental administration. Terraciano was promptly arraigned and, apparently, was immediately released. On April 14, Capozzi returned, accompanied on this occasion by Theodore Kowitt, an investigator with the State Narcotic Control Bureau. Kowitt advised Terraciano that he was conducting an investigation relating to the diversion of controlled drugs in Chemung County and wished to audit the pharmacy's records of 'narcotics, accepted narcotic preparations and depressant and stimulant drugs,' an examination authorized by 3350 and 3390 of the New York Public Health Law, McKinney's Consol.Laws, c. 45, as they then read, which are reproduced in the margin.[1] Kowitt gave appropriate Miranda warnings, and Terraciano proceeded to telephone, apparently to his attorney, who shortly arrived, and neither of them made any protest about Kowitt's activites. Kowitt, who had begun inspecting the records, continued the examination for two days and took into his possession eight narcotic prescriptions, nine depressant and stimulant drug prescriptions, and seventeen records pertaining to depressant and stimulant drugs. Presentation of certain of these records to a grand jury resulted in a 29 count indictment.
 
 
 2
 Terraciano moved to suppress the records on the ground that the search and subsequent seizure violated his rights under the Fourth Amendment. Chemung County Judge Monroe denied the motion on the basis that Terraciano was engaged in a business subject to state regulation. Under 813-c of the New York Code of Criminal Procedure, McKinney's Consol.Laws, as it then read, which allowed a defendant to plead guilty but to appeal the denial of a motion to suppress the results of an allegedly unlawful search or seizure, the prosecutor permitted Terraciano to plead guilty to two of the 29 counts, on which he was given concurrent indeterminate sentences not to exceed three years.
 
 
 3
 On Terraciano's appeal the Appellate Division affirmed, 39 A.D.2d 1005, 333 N.Y.S.2d 903 (3rd Dept. 1972) (mem.), stressing that the search was limited by the statute to records of narcotic, depressant and stimulant drugs, and citing McKaba v. Board of Regents of University of State of New York, 30 A.D.2d 495, 294 N.Y.S.2d 382 (3d Dept. 1968), which held, although in a rather different context, that in accepting his license a pharmacist had impliedly consented to state inspection. Judge, now Chief Judge, Breitel denied leave to appeal to the Court of Appeals.
 
 
 4
 Terraciano then filed a petition for habeas corpus in the District Court for the Western District of New York.[2] Nothing that in his view the State could not successfully contend that Terraciano had consented to the search, see Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), and being apparently unconvinced by the implied consent theory of McKaba v. Board of Regents, supra, Judge Curtin granted the writ on the ground that the New York statutes authorizing the search were not sufficiently limited to justify the failure to obtain a warrant, 360 F.Supp. 1377 (W.D.N.Y. 1973). Since we disagree with this ruling, we need not consider the State's arguments based on the alternative theories of consent.
 
 
 5
 The Supreme Court's holdings in Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), and See v. City of Seattle, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967), that administrative searches were subject to the warrant requirement of the Fourth Amendment were rather promptly narrowed, as, indeed, had been foreshadowed by Camara and See themselves, 387 U.S. at 533, 87 S.Ct. 1727, 18 L.Ed.2d 930 and 387 U.S. at 545-546, 87 S.Ct. 1737, 18 L.Ed.2d 943, in Colonnade Catering Corp. v. United States, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970). Although a divided Court reversed our decision, 410 F.2d 197 (2 Cir. 1969), upholding the search there at issue, none of the Justices disagreed with the portion of Judge Mansfield's thoroughly reasoned opinion which generally sustained warrantless searches under statutes limited to records maintained or products held by regulated industries, in that instance a catering establishment possessed of a liquor license, see 410 F.2d at 200-204; rather the reversal was based on the view of the majority that the statute there at issue did not confer authority for a forcible entry. Colonnade was followed by United States v. Biswell, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972), where the Court sustained a warrantless search during business hours of books and a locked storeroom under the authority of the Gun Control Act of 1968, 18 U.S.C. 923(g).
 
 
 6
 The district court thought the search and seizure here at issue violated the Fourth Amendment because of a reference in the Biswell opinion to 'a regulatory inspection system of business premises that is carefully limited in time, place, and scope.' 406 U.S. at 315, 92 S.Ct. at 1596. This overreads Mr. Justice White's remark. The important distinction is between what Judge Mansfield described in Colonnade, 410 F.2d at 201, as the 'expansive grants of authority' at issue in Camara and See, which 'would permit an inspector, unless a warrant was required, to roam at will through any portion of a dwelling house, in one case, or of commercial property, in the other, without the occupant or owner being able to determine the need for the inspection, its purpose and its lawful limits' and an inspection statutorily limited to the business records and goods of industries that are properly subject to intensive regulation in the public interest. In instances of the former type a warrant serves the valuable office of preventing a 'gneeral search'; in the latter, the warrant, which would be issued for the asking, would simply track the statute and would give the person who was the object of the search nothing more than he already had. See 410 F.2d at 201.
 
 
 7
 The New York statutes which furnished the authority for Kowitt's search were limited to orders, prescriptions or records relating to narcotic, depressant and stimulant drugs, which other New York statutes required to be kept on the premises, Public Health Law 3333(3) and 3388(3) as they then read, and Kowitt neither searched for nor seized anything else. Contrast Finn's Liquor Shop, Inc. v. State Liquor Auth., 24 N.Y.2d 647, 301 N.Y.S.2d 584, 249 N.E.2d 440, cert. denied, 396 U.S. 840, 90 S.Ct. 103, 24 L.Ed.2d 91 (1969) (administrative inspection expanded so far as to search coat pocket). Although unlike the federal statutes considered in Colonnade and Biswell, 26 U.S.C. 5146(b) and 7606, and 18 U.S.C. 923(g), the New York statutes did not then and do not now, Public Health Law 3385, expressly limit entries for inspection to business hours, they never have conferred authority to make a forcible entry into premises that are closed, and a thoughtful opinion by a New York court, differing in its view of the law and its result from Judge Curtin's decision here, informs us that 'it is the policy of the Health Department to perform inspections only during business hours.' People v. Curco Drugs, 76 Misc.2d 222, , 350 N.Y.S.2d 74, 84 (Criminal Court of the City of New York, Kings County, 1973) (Benjamin Altman, J.). While the New York Legislature would do well to consider remodeling its regulatory inspection statutes to incorporate the safeguards contained in the federal act which was adopted in the light of Camara and See, 21 U.S.C. 880, and indeed has already remodeled them to restrict the right of inspection to representatives of the Health Department, Public Health Law 3385, rather than 'all peace officers within the state,' see note 1 supra, we do not find the statutes here at issue so seriously deficient as to render unconstitutional this non-forcible inspection and seizure, during business hours, by a narcotics agent, of records of a licensed pharmacist, maintained on the premises as required, relating to narcotics and stimulant or depressant drugs.
 
 
 8
 The order granting the writ is reversed, with instructions to dismiss the petition.
 
 
 
 [1]
 Section 3350 read as follows:
 
 
 [1]
 It is hereby made the duty of the department, its officers, agents, inspectors and representatives, and of all peace officers within the state, and of the judicial and police authorities of the state and of the political subdivisions thereof to enforce all provisions of this article, except those specifically delegated, and to cooperate with all agencies charged with the enforcement of the laws of the United States, /1/ of this state, and of all other states relating to narcotic drugs. 2. Such authorities and their agents shall have access at all times to all orders, prescriptions or records to be kept under this article. 3. For the purposes of this article, each representative of the commissioner shall possess all of the powers of a peace officer. 1. 21 U.S.C.A. 801 et seq
 Section 3390 read as follows:
 
 
 [1]
 It is hereby made the duty of the department, its officers, agents, inspectors and representatives, and of all peace officers within the state, and of the judicial and police authorities of the state and of the political subdivisions thereof to enforce all provisions of this article, except those specifically delegated, and to cooperate with all agencies charged with the enforcement of the laws of the United States, of this state, and of all other states relating to depressant or stimulant drugs. 2. Such authorities and their agents shall have access at all times to all orders, prescriptions or records to be kept under this article. 3. For the purposes of this article, each representative of the commissioner shall possess all of the powers of a peace officer
 These were repealed by L.1972, c. 878, 1, and replaced, id. 2, by new 3385, which reads as follows:
 
 
 [1]
 The department and its representatives shall have access at all times to all orders, prescriptions or records required to be kept under this article. 2. For the purposes of this article, each employee of the department designated by the commissioner shall possess all of the powers of a peace officer
 
 
 [2]
 We have held that defendants who availed themselves of the course of pleading guilty but reserving a right to appeal under 813-c of the New York Code of Criminal Procedure did not forfeit their right to seek federal habeas. United States ex rel. Rogers v. Warden, 381 F.2d 209 (2 Cir. 1967); United States ex rel. Molloy v. Follette, 391 F.2d 231 (2 Cir.), cert. denied, 391 U.S. 917, 88 S.Ct. 1812, 20 L.Ed.2d 658 (1968). The Supreme Court left an analogous question open. McMann v. Richardson, 397 U.S. 759, 770 n. 13, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)