**UNITED STATES of America, Plaintiff,**

v.

**Robert ENSERRO, Defendant.**

**No. CR–74–185.**

United States District Court, W. D. New York.

Oct. 6, 1975.

---

Richard J. Arcara, U. S. Atty. (Roger P. Williams, Buffalo, N. Y., of counsel), for the Government.

Lipsitz, Green, Fahringer, Roll, Schuller & James, Buffalo, N. Y. (Herald Price Fahringer and Paul J. Cambria, Jr., Buffalo, N. Y., of counsel), for defendant.

CURTIN, Chief Judge.

On May 30, 1974 the defendant, a pharmacist and owner of the Medicine Shoppe Pharmacy in Jamestown, New York, was indicted in a three-count indictment. He was charged with distribution of Schedule II controlled substances without proper written orders, and with failing to maintain required reports and records. Before the court is a motion to suppress drugs seized as a result of an inspection of the premises of the defendant on the ground that the search was conducted contrary to the provisions of the applicable statute and in violation of defendant's fourth amendment rights.

In 1970 Congress enacted a comprehensive statute covering many facets of drug abuse prevention and control. *See* 21 U.S.C. § 801 et seq. 21 U.S.C. § 880 sets forth the procedure for the inspection of "controlled premises" which includes retail pharmacies such as the de-fendant's. Under § 880(b)(1) the Attorney General is authorized to inspect records and documents at such premises in accordance with the provisions of § 880(b)(2) which provides:

> Such entries and inspections shall be carried out through officers or employees (hereinafter referred to as "inspectors") designated by the Attorney General. Any such inspector, upon stating his purpose and presenting to the owner, operator, or agent in charge of such premises (A) appropriate credentials and (B) a written notice of his inspection authority (which notice in the case of an inspection requiring, or in fact supported by, an administrative inspection warrant shall consist of such warrant), shall have the right to enter such premises and conduct such inspection at reasonable times.

Subsection (c) of § 880 provides for those circumstances where a warrant is not required. Under (c) a warrant is not required for inspection of books and records pursuant to an administrative subpoena issued in accordance with § 876 of Title 21, or for the administrative inspection including the seizures of property in the following cases:

1. Consent;

2. Situations presenting imminent danger to health and safety;

3. The inspection of conveyances of easy mobility;

4. Exceptional or emergency circumstances where time or opportunity to obtain a warrant is lacking, or

5. "[A]ny other situations where a warrant is not constitutionally required."

The legislative history regarding § 880 is informative:

> The provisions authorizing the issuance of judicial warrants for administrative inspections under the bill have been inserted because of the Supreme Court's decisions in *Camara v. Municipal Court,* 387 U.S. 523 [87 S.Ct. 1727, 18 L.Ed.2d 930] and *See v.*

*Seattle,* 387 U.S. 541 [87 S.Ct. 1737, 18 L.Ed.2d 943] both decided on June 5, 1967. . . . The Court held [in both cases that] a warrant was constitutionally required . . . . In deference to these decisions a provision for issuance of judicial warrants for administrative inspections has been inserted in the bill. 1970 U.S.Code Cong. & Ad.News 4623. [Parallel citations omitted.]

Under the circumstances of this case, the government's present position is that the warrantless search of the premises should be upheld under § 880(c)(5), which eliminates the need for a warrant "in any situations where a warrant is not constitutionally required." The government's theory is that this section, when read in conjunction with *United States v. Biswell,* 406 U.S. 311 [92 S.Ct. 1593, 32 L.Ed.2d 87] (1972), eliminates the need for an inspection warrant. Before a discussion of the impact of the *Biswell* decision is made, the facts will be briefly set forth.

Some time prior to November 29, 1973, the day of the inspection, the Federal Drug Enforcement Agency [DEA] was informed by the Jamestown, New York Police Department that they had received a complaint about the illegal distribution of drugs at the pharmacy operated by the defendant. Compliance officers of the DEA, with a "Notice of Inspection of Controlled Premises," came to defendant's place of business on that day. Because defendant was not there, they approached Michael Constantino, the registered pharmacist on duty, who was shown a copy of the Notice of Inspection. The agents did not have an inspection warrant. The agents told him that he would face criminal penalties under Title 21 of the United States Code unless he signed a consent permitting the inspection. Faced with that threat, Constantino signed the consent and permitted the inspection demanded by the agents.

The government now agrees that there was no legally effective consent given pursuant to § 880(c)(1). The representations made by the agents at that time were clearly erroneous and a search by consent was not justified. *Bumper v. North Carolina,* 391 U.S. 543, [88 S.Ct. 1788, 20 L.Ed.2d 797] (1968). The agents' threat, that if Constantino refused permission to search he would be subject to criminal prosecution, was evidently based upon § 842(a)(6), which reads:

> It shall be unlawful for any person —
>
> *  *  *  *  *  *
>
> (6) to refuse any entry into any premises or inspection authorized by this subchapter or subchapter II of this chapter.

This section can be violated only if inspection is refused after an administrative inspection warrant has been secured. *See United States v. Cardiff,* 344 U.S. 174 [73 S.Ct. 189, 97 L.Ed. 200] (1952); *United States v. Thriftimart, Inc.,* 429 F.2d 1006, 1010 (9th Cir.), *cert. denied,* 400 U.S. 926 [91 S.Ct. 188, 27 L.Ed.2d 185,] *rehearing denied,* 400 U.S. 1002 [91 S.Ct. 453, 27 L.Ed.2d 454] (1971); *United States v. Hammond Milling Co.,* 413 F.2d 608 (5th Cir. 1969), *cert. denied,* 396 U.S. 1002 [90 S.Ct. 552, 24 L.Ed.2d 494] (1970).

After Mr. Constantino signed the consent, the agents took an inventory of the drugs on hand and discovered that the pharmacy had more cocaine hydrochloride than it should have had based upon the order forms and the physical count. The search covered the first floor and also the basement area of the premises where no drug records were kept, but some of the boxes containing drugs were located. When Mr. Enserro came to the premises, he stated that the controlled substances bearing Jamestown General Hospital labels were removed by him from the Jamestown General Hospital Pharmacy, of which he was in charge, and transferred to his place of business for purposes of destruction.

■ The government's argument that a warrant was not necessary in this case in light of the Supreme Court's decision in *United States v. Biswell, supra,* is without merit. In that case, the Supreme Court upheld a warrantless search made pursuant to the Gun Control Act of 1968, 18 U.S.C. § 923(g). That section specifically authorized the Secretary of the Treasury to enter and inspect records or firearms without mentioning the necessity of a warrant. The Court said:

> . . . [W]here, as here, regulatory inspections further urgent federal interest, and the possibilities of abuse and the threat to privacy are not of impressive dimensions, the inspection may proceed without a warrant where specifically authorized by statute. 406 U.S. at 317 [92 S.Ct. at 1597].

The important point is that Congress, in the Gun Control Act of 1968, had made the determination that it was in the public interest to give the Secretary of the Treasury the authority to enter and inspect premises without the necessity of a warrant. Congress chose not to follow that procedure under 21 U.S.C. § 880. Instead, Congress laid out an elaborate scheme of applying for a warrant before the search may be conducted, with certain exceptions not applicable here. It is not required that the usual probable cause elements be satisfied before the agent may obtain the warrant from the Magistrate:

> . . . For the purposes of this section [880], the term "probable cause" means a valid public interest in the effective enforcement of this subchapter or regulations thereunder sufficient to justify administrative inspections . . . in the circumstances specified in the application for the warrant.

§ 880(d)(1).

*See United States v. Greenberg,* 334 F. Supp. 364, 366 (W.D.Pa.1971). But it is necessary that a warrant be obtained in the usual case. To permit reading of § 880(c)(5) to permit a search and inspection under the facts presented in this case would mean that there was no purpose at all to the elaborate warrant scheme.

Certainly there are circumstances which may justify a search under § 880 (c)(5). *See Katz v. United States,* 389 U.S. 347, 357 [88 S.Ct. 507, 19 L.Ed.2d 576] (1967); *Coolidge v. New Hampshire,* 403 U.S. 443, 454–55 [91 S.Ct. 2022, 29 L.Ed.2d 564] (1971), and *Chambers v. Maroney,* 399 U.S. 42, 51 [90 S.Ct. 1975, 26 L.Ed.2d 419] (1970). But, as the district court in *United States v. Montrom,* 345 F.Supp. 1337 (E.D.Pa.1972), *aff'd,* 480 F.2d 919 (3d Cir. 1973), stated in discussing this problem:

> . . . *Biswell* makes the existence of a statute carefully defining the time, place and scope of an allowable inspection a prerequisite of a valid inspection without a warrant. The only such definitions in 21 U.S.C. § 880 relate only to the warrant procedure. There is no indication that they would have been drafted as they were absent the warrant procedure. Thus, this Court is not impressed with the facile argument that *Biswell* and § 880(c)(5) combine to make a warrant unnecessary in all cases. A warrant remains the necessary standard procedure, since there is no statute defining specific standards for warrantless inspections in terms of time, place and scope, unless and until Congress sees fit to change the statute.

345 F.Supp. at 1340, n. 1.

*See United States v. Anile,* 352 F.Supp. 14 (N.D.W.Va.1973), and *United States v. Greenberg, supra.*

The government's reliance upon *Terraciano v. Montanye,* 493 F.2d 682 (2d Cir. 1974), *cert. denied,* 419 U.S. 875 [95 S.Ct. 137, 42 L.Ed.2d 114] (1974), is misplaced. In that case, the Second Circuit construed New York Public Health Law, §§ 3350 and 3390. This New York statute did *not* contain the safeguards contained in 21 U.S.C. § 880. In fact, Judge Friendly made a point of recommending to the New York Legisla-

ture to consider remodeling its regulatory inspection statutes to incorporate the safeguards contained in the federal Act, but went on to point out that he did not find the statutes at issue in that case unconstitutional. 493 F.2d at 685. Although Congress, if it desired, could have given the drug agents the authority given to Treasury agents under *Biswell*, it decided not to. For this reason, *Colonnade Catering Corp. v. United States*, 410 F.2d 197, 201 (2d Cir. 1969), *rev'd on other grounds*, 397 U.S. 72 [90 S.Ct. 774, 25 L.Ed.2d 60] (1970), does not support the government's position.

 The motion of the defendant to suppress the evidence gathered by the agents during this inspection is granted. Because the subsequent statements made by Mr. Enserro were directly related to the information gathered by the agents as a result of the illegal search, the motion to suppress the statements taken from him at that time is also granted. *Wong Sun v. United States*, 371 U.S. 471 [83 S.Ct. 407, 9 L.Ed.2d 441] (1963).

Because the decision arrived at on this motion is applicable to a similar motion filed in *United States v. Zediker*, CR–74–86, the Clerk is directed to file a copy of this decision in the Zediker file.

So ordered.