■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSEPH DRISCOLL, Appellant. (Appeal No. 1.) — Judgment unanimously reversed, on the law and facts, motion to suppress granted, and matter remitted to Supreme Court, Erie County, for further proceedings on the indictment. Memorandum: Defendant appeals from a judgment of conviction entered upon his plea of guilty to burglary, third degree in full satisfaction of an indictment charging him with committing that crime and grand larceny, third degree in 1979. The plea followed an unsuccessful attempt by defendant to suppress physical, testimonial and identification evidence. Following his plea but before he was sentenced, defendant was arrested in 1980 for a subsequent burglary and several misdemeanors. He waived indictment on the 1980 burglary charge and pleaded guilty to a superior court information charging him with burglary, third degree in full satisfaction of the burglary and the misdemeanor charges. He also appeals that judgment. He contends that the waiver of indictment and the plea to the 1980 burglary were related to and dependent on the plea to the 1979 indictment and that since his plea on the indictment was precipitated by the erroneous rulings of the suppression court, both judgments must be reversed and his pleas vacated. The plea to the 1980 burglary was conditioned upon an agreement that his sentence for the two crimes would run concurrently and consistent with that bargain, defendant was sentenced as a predicate felon to concurrent terms of three to six years' imprisonment on the 1979 burglary charged in the indictment and three and one-half to seven years on the 1980 burglary charged in the superior court information. In his challenge to the suppression ruling, defendant claims that a consent to search his apartment given by a girlfriend who lived there was coerced because it was given after she was threatened with arrest for unlawful possession of stolen property unless she permitted the search. He also sought to suppress certain admissions that he made in the police station, claiming that after the property was illegally seized from his apartment, it was taken to police headquarters where he saw it and made the incriminating statements. Those admissions, he claims, are tainted by the prior illegal search. The case arises out of these facts: On August 31, 1979 at about 3:00 A.M., Officer O'Rourk of the Buffalo police was informed of a burglary and about a half hour later, while on patrol, he spotted defendant riding a red bicycle. He had known defendant before and noted that he matched the description of the burglar that had been relayed to him. The officer stopped defendant, asked him whether the bicycle belonged to him and when defendant said no, that he had borrowed it from two kids in Taylor Park, the officer told defendant to get into the police car, put the bicycle in the trunk and drove to Taylor Park. Unable to find anyone at the park, O'Rourk took defendant to the police station and left him there. O'Rourk considered defendant to be in custody at the time. O'Rourk and another officer then went to the house of Mary Ellen Canabury, the mother of the defendant's

girlfriend, to search for stolen property. They found nothing at the Canabury residence. They then went to the defendant's apartment, with Mrs. Canabury, where her daughter, Annette Canabury, lived with defendant and his son. It was then about 4:00 A.M. Mrs. Canabury knocked on the door, Annette opened the door and upon seeing the police, slammed it shut and said, "I'm not dressed." O'Rourk knocked again and eventually Annette came out. In response to the officers' inquiries, she stated that she had not seen the defendant since earlier that evening. The officers then explained that they were looking for stolen property and asked if they could go in the apartment to look for it. Annette refused. The officers then stated that they had probable cause to believe that the property was there, that they would get a warrant if they had to, "but nobody is going in or out until we check the premises." O'Rourk then testified that he told Annette that: "if she didn't allow us to come in and we went to get the search warrant, she would be charged with possession of stolen property also." Annette and her mother then went inside and shortly thereafter, the officers were allowed to enter. When they entered Annette said, "There's some property in here that I don't know how it got here * * * I didn't have the light on and I didn't see it." In the hall the officers found 15 bottles of assorted pills, 37 cartons of cigarettes and 11 watches. They gathered them up and proceeded to the police station. When the officers entered the front door of the station carrying boxes of cigarettes, defendant was standing on the public side of the counter. As they brought the property in, defendant turned around and said, "how did you get that property, how did you know where I live?", or words to that effect. The statements were made without inquiry by anyone and without any particular effort by police officers to display the contraband to defendant. We agree with defendant that since the consent to search was given after a threat of prosecution, the consent was involuntary. Since the search was illegal and there was no attenuation of the illegality, the admissions made by defendant after seeing the contraband must also be suppressed. Governmental intrusion into the privacy of the home is, with limited exceptions, prohibited by constitutional limitation in the absence of a valid search warrant (*People v Gonzalez,* 39 NY2d 122, 127, citing NY Const, art I, § 12; US Const, 4th, 14th Amdts). The warrant requirement and the requirement of probable cause may be obviated if this is a voluntary consent to the search (*Schneckloth v Bustamonte,* 412 US 218, 222; *People v Gonzalez, supra,* at p 127). When the prosecution seeks to rely upon consent to justify the lawfulness of a search, however, it has a heavy burden of proving that the consent was voluntarily given (*Bumper v North Carolina,* 391 US 543, 548-549; *People v Whitehurst,* 25 NY2d 389; *People v Brown,* 77 AD2d 537; *People v McNeeley,* 77 AD2d 205, 209). Consent is voluntary only when it is an act of free will and unconstrained choice. "Voluntariness is incompatible with official coercion, actual or implicit, overt or subtle" (*People v Gonzalez, supra,* at p 128). It is determined from all of the surrounding circumstances. Here, the People have failed to establish that Annette's consent was a voluntary act. On the contrary, it appears indisputable that the consent was obtained by the improper threat of the police that she would be arrested for unlawful possession of the contraband (see *People v Gonzalez, supra; People v Goldsmith,* 76 AD2d 843; see, also, *People v Cioffi,* 55 AD2d 682; *United States v Enserro,* 401 F Supp 460). The exclusionary rule renders inadmissible *any evidence* which stems from the use of the illegally seized evidence, including a defendant's statements (*Wong Sun v United States,* 371 US 471; *People v Wright,* 37 NY2d 88; *People v Hendricks,* 25 NY2d 129; *People v Rodriguez,* 11 NY2d 279). Thus, although the police encountered defendant inadvertently upon entering the station carrying the contraband and did not intentionally confront him with it, there was no attenuation between the illegal seizure of the evidence and this provocation for defendant's

statements, and the exclusionary rule requires that the statements be suppressed. We have considered defendant's other points and find them to be without merit. The judgment convicting defendant of a burglary occurring on September 12, 1979 is reversed, defendant's plea vacated and the motion to suppress the physical evidence and·his admissions in the police station granted. Because we are unable to say that the court's erroneous suppression ruling was harmless beyond a reasonable doubt in producing the second pleas the judgment for the 1980 burglary must also be reversed and the plea vacated (see *People v Grant,* 45 NY2d 366, 379-380). (Appeal from judgment of Supreme Court, Erie County, Kasler, J. — burglary, third degree.) Present — Dillon, P. J., Simons, Hancock, Jr., Callahan and Doerr, JJ.