THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CORNELL ABRAMS, Appellant.

Second Department, July 25, 1983

APPEARANCES OF COUNSEL

*William E. Hellerstein* (*Karen Goldstein* of counsel), for appellant.

*John J. Santucci, District Attorney* (*Catherine Lomuscio* and *Richard G. Denzer* of counsel), for respondent.

OPINION OF THE COURT

LAZER, J.

The issue is the effect of a police ruse on the validity of a consent to search. On the facts before us, the consent was not undermined by the police conduct involved.

At about 4:15 A.M. on October 9, 1978, Police Officer Jerome Leonard peered from the window of his house and saw a man emerge from a house across the street and place

articles in the trunk of a car about 50 feet from Leonard's home. During the approximately seven minutes that Leonard observed him, the individual made two trips to the car. Leonard recorded the license plate number and promptly reported the incident, but when police cars arrived the man left the vehicle and fled. Shortly afterward, the defendant reported his car stolen. Later that morning, Leonard accompanied Officers Collins and Walsh to the defendant's home, which was located in a different neighborhood from the one where the incident occurred. Already present there were other officers who were investigating the stolen car report. The plate number defendant gave to Leonard, Collins and Walsh matched the one on the car that Leonard had seen from his window. Without informing defendant that the true purpose of their visit was to see whether Leonard could identify him as the man seen earlier that morning, Collins asked defendant for his car keys so that the stolen car could be brought to the precinct if it was found. Defendant immediately gave the keys to Collins, who, with his fellow officers, went to defendant's car, which was still parked near Leonard's house. When the officers opened the trunk of the car, they found property stolen from the nearby residence.

Defendant subsequently moved to suppress his identification and the property recovered from his car. After a hearing, the court found the identification at defendant's apartment to be suggestive, but ruled that Leonard could make an in-court identification on the basis of his independent observation of the incident. On the *Mapp* issue, the court denied suppression of the physical evidence because the police had probable cause to search the car. Thereafter, defendant pleaded guilty to attempted burglary in the second degree and now appeals on the basis of the denial of his suppression motion.

■ We agree with Criminal Term that Leonard had an independent source for identifying the defendant and we affirm the denial of suppression as to the in-court identification (see *Manson v Brathwaite,* 432 US 98). The *Mapp* issue is somewhat more troublesome, however, for we must determine whether, under the totality of the circumstances, defendant's consent to search his car was volun-

tarily given (see *Schneckloth v Bustamonte,* 412 US 218; *People v Gonzalez,* 39 NY2d 122). The voluntariness of a consent depends on whether the consent was " 'the product of an essentially free and unconstrained choice' " (*Schneckloth v Bustamonte, supra,* p 225). The People bear the burden of proving the voluntariness of the purported consent (*People v Kuhn,* 33 NY2d 203, 208).

Since a consent may be established by word or deed (*People v Whitehurst,* 25 NY2d 389), a defendant who voluntarily gives his keys to a police officer to permit his vehicle to be searched, makes a valid consent to search (see *People v Neulist,* 43 AD2d 150, 159; *Robinson v United States,* 325 F2d 880, 884; *Grice v United States,* 146 F2d 849; *State v Theroux,* 111 RI 617). The issue here, however, is whether the officers' deception as to the true purpose of their visit undermines the voluntariness of the consent to search. In *Schneckloth v Bustamonte* (412 US 218, *supra*), the Supreme Court held that the validity of a purported consent to search is to be determined by a voluntariness test like the one used in confession cases, and that the police need not warn the consenter of the constitutional right to refuse consent. The use of deception does not destroy the voluntariness of a consent per se unless the deception is so fundamentally unfair as to deny due process (see *People v Tarsia,* 50 NY2d 1, 11; *People v Pereira,* 26 NY2d 265, 266-267; *People v McQueen,* 18 NY2d 337, 346; 2 LaFave, Search & Seizure, § 8.2[n], pp 687-688). Whether a police ruse amounts to a deception that undermines the validity of a consent therefore must be decided on a case-by-case basis. The Supreme Court has upheld the propriety of the use of an undercover police officer who poses as a prospective purchaser of narcotics (see *Lewis v United States,* 385 US 206), the planting of a government informer in a suspect's hotel room (see *Hoffa v United States,* 385 US 293) or the offering of a bribe to a government official by an undercover officer (see *Lopez v United States,* 373 US 427). Even the governmental involvement in the recent Abscam cases was held to be within the bounds of fundamental fairness under the due process clause (see *United States v Kelly,* 707 F2d 1460; *United States v Myers,* 692 F2d 823,

cert den __ US __ [May 31, 1983]; *United States v Jannotti,* 673 F2d 578, cert den 457 US 1106).

■ Here, the police took advantage of defendant's false report that his car had been stolen, but they did not create the situation, misstate what they were looking for, nor introduce extraneous factors calculated to make it falsely appear that surrender of defendant's privacy was essential (see 2 LaFave, Search & Seizure, § 8.2[n], p 690; see, also, *United States v Bailey,* 447 F2d 735; *Commonwealth v Brown,* 437 Pa 1, writ of habeas corpus den *sub nom. Brown v Brierley,* 438 F2d 954, cert den 402 US 997; *State v Fredette,* 411 A2d 65 [Me]). Manifestly, defendant wanted the police to find the car and search it (see *Commonwealth v Brown, supra*) in an apparent effort to absolve himself of any responsibility for the contents found. Distinguishable, then, are cases where an officer falsely represents facts that normally establish the exercise of police authority to which a person would ordinarily yield, such as obtaining entry to a home by falsely stating that the investigation was based upon a nonexistent gas leak (*People v Jefferson,* 43 AD2d 112), by misrepresenting that a defendant's car had been in an accident (*People v Torres,* 45 AD2d 185), or by the false assertion that the officer had a search warrant (*Bumper v North Carolina,* 391 US 543). In contrast to the cited cases, there is no evidence of any coercive tactic here, for the defendant sought the assistance of the police in finding his car even though he knew where the car was and upon request offered his keys to assist in the search. All of this occurred in the relative security of defendant's own home where he could more easily resist the intrusion of the police (*People v Gonzalez,* 39 NY2d 122, 128-129, *supra*) whom he had invited by reporting his car was stolen. Thus, we conclude that the consent was a product of an essentially free and unconstrained choice, and not the result of a submission to authority.

Having determined that the consent was valid, we must still examine its scope. Since the consent given was general and unqualified, with no express or implied limitations placed upon the intensity of the search of the car, the police properly proceeded to search the trunk (see *State v Johnson,* 71 Wn 2d 239; 2 LaFave, Search & Seizure, § 8.1[c], p

624). Defendant's conduct evinced a broad consent, especially since he freely gave the officers the key to the car (which necessarily provided them with the ability to open the trunk) and he made no objection to their announced intent to bring the car to the precinct — where an inventory search could be made (see *South Dakota v Opperman,* 428 US 364; see, also, Vehicle and Traffic Law, § 424, subd 2; *United States v Ochs,* 461 F Supp 1). Thus, suppression of the property discovered during the search of the car was properly denied and there should be an affirmance.

DAMIANI, J. P., MANGANO and THOMPSON, JJ., concur.

Judgment of the Supreme Court, Queens County, rendered December 5, 1980, affirmed.