THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JORGE VARAS, Also Known as GEORGE VARAS, and ELVIRA ANDRAMUNO, Appellants.

The record fairly reflects that the People established beyond a reasonable doubt that defendants conspired to and did practice and aid in the practice of medicine without a license, offered false instruments for filing, willfully violated the health laws and committed petit larceny.

There was sufficient evidence to support a finding that on at least five occasions, defendant Andramuno practiced medicine although she was not licensed to do so, in direct contravention of Education Law § 6512. Specifically, on October 17, November 20 and December 3, 1980 and on March 2, 1981, Andramuno held herself out as a physician to a special investigator on the Deputy Attorney-General's staff who was then posing as a Medicaid patient. The investigator, who recorded her sessions with Andramuno on a "NAGRA" tape recorder, testified that at various times Andramuno examined her, diagnosed her condition, and wrote prescriptions. The evidence also reveals that on December 3, 1980, Andramuno treated a patient by the name of Lily Calderon. Lily Calderon likewise testified that "the lady doctor" treated her in December 1980, took her blood pressure, and gave her a prescription. The four different prescriptions issued by Andramuno to the investigator and Calderon on the occasions of their visits to her were concededly for controlled substances. Hence, her conduct was, in that respect, violative of New York State Public Health Law §§ 3304, 12-b (2).

Defendants argue that the Deputy Attorney-General failed to sustain his burden of demonstrating beyond a reasonable doubt that Andramuno was not authorized to practice medicine. It is undisputed that Andramuno is a medical doctor, having graduated from a medical school in Ecuador. Uncontradicted expert testimony reveals that in order to obtain a license to practice medicine in this State, a graduate of a foreign medical school must first pass the "E.C.F.M.G." examination, then put in two years of hospital training, and finally pass what is known as the "Flex Exam". However, the evidence revealed that Andramuno has failed the E.C.F.M.G. examination on numerous occasions, including most recently on July 25, 1979. She, therefore, could not possibly have completed her two-year internship prior to the time she practiced medicine as outlined above. Moreover, a search of the records of New York State Education Department revealed that as of February 24, 1981, no one named Elvira (or Lucrecia) Andramuno was licensed to practice medicine in this State.

In conclusion, there is no merit to Andramuno's contention that the Deputy Attorney-General failed to prove she was not licensed under a name she previously used, or that she was not authorized to practice medicine without a license.

While it is true that, in certain limited instances, an unlicensed physician may practice medicine in this State (*see,* Education Law §§ 6525, 6526), the record amply demonstrates that these exceptions are inapplicable in the case of defendant Andramuno. Moreover, she failed to sustain her burden of proving that she was authorized to practice medicine under any such special exception (*see generally, People v Bradford,* 227 NY 45; *People v Devinny,* 227 NY 397).

Having established that Andramuno illegally practiced medicine, the Deputy Attorney-General also proved beyond a reasonable doubt that defendant Varas knew of Andramuno's activities and, indeed, supported them. Andramuno used Varas' office and wrote prescriptions on his prescription pad. Moreover, his Medicaid claim forms were submitted, and reimbursement was made, for services rendered by her. Significantly, Varas directed some of his patients to the "lady doctor" and indicated that she could render treatment when he was not in the office.

The conclusion that Varas, in effect, hired Andramuno to work in his office, in spite of his knowledge that she was unlicensed, is inescapable. His conviction for aiding and abetting Andramuno in her illegal practice of medicine and issuance of prescriptions is supported by the evidence on a theory of accessorial conduct (Penal Law § 20.00). Additionally, in view of the fact that circumstantial evidence of an agreement between Andramuno and Varas is so overwhelming, their conviction for the crime of conspiracy in the fifth degree was also proper.

The evidence likewise supports a conclusion that defendants offered false instruments for filing and committed petit larceny. As per the testimony of a New York State Department of Social Services auditor, a licensed practitioner must first enroll in the Medicaid system in order to be designated as a Medicaid provider. The system is predicated on the assumption that the service is rendered by the provider whose unique identification number appears on the Medicaid claim form. Thus, in billing Medicaid on Varas' claim forms for treatment actually rendered by Andramuno, an unlicensed practitioner, defendants supplied false information to the Medicaid system. Defendant Varas' contention that he was unaware of Andramuno's billing activities is incredible in view of the totality of the evidence.

With respect to the other contentions raised on appeal, we find that the statement made by Dr. Varas to special agents of the Attorney-General on September 11, 1981 was made in a noncustodial context. While the agents procured their interview with Dr. Varas under false pretenses, this deceptive conduct does not, by itself, warrant suppression of his statement (*People v Pereira,*

26 NY2d 265, 269; *see also, People v Abrams,* 95 AD2d 155). Varas' motion to suppress certain records seized from his office on the ground that the physician-patient privilege (CPLR 4504 [a]) is applicable (*see,* CPL 60.10) is without merit. First, Varas' complicity in the crime of unauthorized practice of medicine bars him from invoking the privilege with respect to patients against whom this crime was committed (*Matter of Grand Jury Proceedings [Doe]* 86 AD2d 672, 673, *affd* 56 NY2d 348). Second, the privilege must give way to the overriding State interest in the administration of the Medicaid system (*see, Matter of Camperlengo v Blum,* 56 NY2d 251; *Matter of Doe v Kuriansky,* 91 AD2d 1068, *affd* 59 NY2d 836). Given the duty of a physician to maintain records for six years (18 NYCRR 540.7 [a] [8]), a fact of which the court could take judicial notice (CPLR 4511 [a]), we conclude that the affidavit in support of the application for a search warrant, pursuant to which the records were seized, was not "stale". There was probable cause to believe the subject records were still in Dr. Varas' office at the time the application was made, and there was also probable cause to believe that those records contained evidence of the unauthorized practice of medicine. Finally, we find defendant Varas' contention, that it was error not to sever defendants' trials to be without merit and note that defendant Andramuno's contention as to the specificity of the indictment was not preserved for review (*see, People v Pepper,* 59 NY2d 353). Nor do we choose to exercise our interest of justice jurisdiction.

While we agree that defendants were properly convicted of the subject crimes, we are of the view that the imposition of intermittent terms of incarceration was unduly harsh and excessive. Neither defendant has had any prior contact with the criminal justice system. The sentencing court acknowledged that the People's witnesses believed that they had received competent treatment. In view of the surrounding circumstances, defendants' probation reports recommended that they each be sentenced to terms of probation and that a substantial fine be imposed upon Varas. These defendants do not appear to constitute a danger to society or to be in apparent need of rehabilitation. To submit defendants to physical confinement in addition to probation and community service and, in Varas' case, a monetary sanction, neither accords with general sentencing principles nor benefits society as a whole. Accordingly, the interest of justice calls for a modification of the sentences imposed to the extent of deleting the intermittent terms of incarceration. Gibbons, J. P., Weinstein, Brown and Eiber, JJ., concur.