■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JANICE UPDIKE, Appellant.—Main, J. Appeal from a judgment of the Supreme Court at Trial Term (Crew, III, J.), rendered November 16, 1984 in Chemung County, upon a verdict convicting defendant of the crimes of hindering prosecution in the second degree and hindering prosecution in the third degree.

At 10:40 P.M. on January 7, 1984, a police officer of the Elmira Police Department spotted a taxicab that had been reported stolen several hours earlier from the City of Binghamton, Broome County, parked in front of an apartment complex in the City of Elmira, Chemung County. Police investigators learned that one of the suspects in the theft of the taxicab and robbery of its driver was an acquaintance of defendant, a resident of the apartment complex. Shortly after midnight on January 8, 1984, police officers went to the apartment complex to talk to defendant about her knowledge of the suspects' location. Defendant met the officers as she was leaving her building and asked them if they were looking for her. They responded that they were, and informed her that they were not arresting her but would like her to accompany them to police headquarters to answer some questions. She agreed. When one of the officers asked her whether anyone was in her apartment, she responded in the negative.

At police headquarters, an investigator informed defendant that they were investigating a reported robbery and that two

men were believed to be responsible. Defendant told the investigator that one of the two men had been at her apartment earlier in the evening, but had stayed for only five minutes—coincidentally at approximately the same time that the robbery was occurring in Binghamton. Concerned about this time element, the investigator continued to question her about the suspect's presence at her apartment. After a half hour of questioning, defendant told the investigator that both suspects were in her apartment at that time. She then proceeded to sign a statement describing the suspects' conduct in her apartment as well as the items they had brought with them, including guns, duffle bags, bullet-proof vests, a police scanner and various wallets containing money. She also described the layout of the apartment to the investigators, gave the apartment keys to an investigator and told him how to operate the lock.

The subsequent police entry of the apartment at 5:40 A.M. led to a gun battle between the suspects and the police, lasting approximately 30 minutes and resulting in the deaths of both suspects and a police officer. During the course of events, tear gas was used in the apartment. The police did not learn of the deaths of the suspects until 6:00 P.M. on January 8, 1984, when a robot with a video screen was introduced into the apartment and revealed the apparently deceased suspects. Police officers then entered and secured the apartment and compiled an inventory of various items in the apartment. Although the suspects' bodies were removed that evening, none of the inventoried items were removed due to the concentration of tear gas in the apartment. An armed guard patrolled the apartment during the night, and the inventoried items were removed the following day.

Defendant was indicted on January 27, 1984 for hindering prosecution in the second degree and hindering prosecution in the third degree, based on her refusal to inform the police that the suspects were in her apartment when she was first questioned. She moved to suppress the various items removed from her apartment, contending that the police entry of her apartment for their removal was illegal. The trial court denied the motion, and defendant subsequently was convicted of both crimes charged.

Addressing first defendant's contention that the trial court lacked jurisdiction over her because she was not requested to plead to the indictment at the time of arraignment and did not enter a plea until the time of trial, we note that this issue was never presented to the trial court. On the merits, more-

over, there is no statutory requirement that a defendant enter a plea at the time of arraignment. CPL 210.50 requires simply that a defendant enter a plea to an indictment; it does not specify when the plea must be entered. Similarly, CPL 210.15, specifying a defendant's rights at an arraignment, does not include among those rights the right to enter a plea. It has thus been noted that "[t]he CPL explicitly differentiates between the 'arraignment' * * * and the 'plea', both by definition * * * and by separate mandates with respect thereto" (Bellacosa, Practice Commentary, McKinney's Cons Laws of NY, Book 11A, CPL 210.50, p 198). In light of this, and in light of the fact that defendant has not demonstrated any prejudice resulting from the late entry of plea, we find that the trial court did have jurisdiction over defendant.

The legality of the search of defendant's apartment and removal of items therefrom presents a more difficult question. We are cognizant of the importance of the items removed from defendant's apartment to the People's case against defendant; in order to prove defendant's guilt, the People were required to demonstrate that the two suspects had in fact committed a felony (see, Penal Law §§ 205.55, 205.60), and the evidence which defendant seeks to suppress was used in this manner. We further recognize the unique fact situation which gave rise to the removal of the items sought to be suppressed, a fact situation which fortunately is seldom encountered. Here, defendant contends that, although she consented to the police entry of her apartment for the purpose of arresting the robbery suspects, she did not consent to the search of her apartment after the death of the suspects. However, we are of the opinion that defendant's consent was not such a limited consent and, in light of the circumstances of this case, the trial court correctly denied defendant's suppression motion.

A consent to search an area need not be express; it may be established by word or deed (see, People v Abrams, 95 AD2d 155, 157; cf. People v Whitehurst, 25 NY2d 389, 392). The evidence in this case establishes that defendant, no stranger to the criminal justice system, actively confronted the police officers outside her apartment building. Aware that she was not under arrest, she willingly accompanied the officers to police headquarters. By her own statement, made in a notice of claim she subsequently filed against the City of Elmira for damages she sustained as a result of the events herein, she "first felt safe" at police headquarters, described and drew a diagram of her apartment, described the suspects' weapons and other items brought into the apartment by the suspects

and, in essence, "fully cooperated" with the police efforts to apprehend the suspects. Further, she gave a police investigator the keys to the apartment and told him how to operate the lock *(cf. People v Abrams, supra)*.

We find that defendant's conduct demonstrates that, when she cooperated in effecting the police entry of her apartment, defendant understood that the items in the apartment relating to the robbery of the taxi driver, brought into the apartment by the suspects, would be removed from the apartment by the police. At the time she made her statements and handed over her keys, it was apparent that the police sought to arrest the suspects of robbery and kidnapping charges and that the items in the apartment would be removed in conjunction with the arrest. While, certainly, no one could predict the tragic events which would follow the police entry of the apartment in order to arrest the suspects, it cannot be reasonably inferred by defendant's conduct that she was consenting to the search for and removal of items in the apartment only if the suspects were captured alive. Accordingly, we conclude that defendant's concession that she did consent to the police entry of her apartment to make arrests, coupled with her actions of describing the apartment's layout, describing some of the items brought into the apartment by the suspects as well as their location, and handing over her apartment keys, demonstrates that she was consenting to the removal of the items from the apartment as well as the removal of the suspects themselves.

Judgment affirmed. Kane, J. P., Main, Casey, Mikoll and Harvey, JJ., concur.