People v Zapata (2020 NY Slip Op 51553(U))

[*1]

People v Zapata (Emiliano)

2020 NY Slip Op 51553(U) [70 Misc 3d 132(A)]

Decided on December 24, 2020

Appellate Term, Second Department

Published by New York State Law Reporting Bureau
pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be
published in the printed Official Reports.

Decided on December 24, 2020
SUPREME COURT, APPELLATE TERM, SECOND
DEPARTMENT, 9th and 10th JUDICIAL DISTRICTS
PRESENT: : BRUCE E. TOLBERT, J.P., THOMAS A. ADAMS, TERRY JANE
RUDERMAN, JJ

2018-1125 OR CR

The People of the State of New York,
Respondent,
against
Emiliano Zapata, Appellant. 

Larkin, Ingrassia and Tepermayster, LLP (Michael Collado of counsel), for appellant.
Orange County District Attorney (Robert H. Middlemiss), for respondent.

Appeal from a judgment of the Justice Court of the Town of Hamptonburgh, Orange County
(Edward P. Souto, J.), rendered April 25, 2018. The judgment convicted defendant, upon his plea
of guilty, of animal cruelty, and imposed sentence. The appeal brings up for review so much of
an order of that court issued on January 24, 2018, after a hearing, denying the branches of
defendant's omnibus motion seeking to controvert a search warrant and to suppress certain
physical evidence and statements.

ORDERED that the judgment of conviction is affirmed.
In a superseding information, defendant was charged with 17 counts of animal cruelty
(Agriculture and Markets Law § 353) and 10 counts of improper disposal of dead animals
(Agriculture and Markets Law § 377).
At a suppression hearing, Animal Control Officer of the Town of Montgomery Police
Department Anna Ilkiw testified that, on the morning of September 24, 2015, she met with
Andrea Coleman, who told her that, on September 23, 2015, at 9:30 p.m., she found a sheep,
alive with a head wound covered with maggots, lying in the middle of State Route 416. Coleman
told her that a police officer had responded to the scene after she had reported the incident, and
that Coleman and the officer had dragged the sheep to property located at 282 State Route 416
and placed it behind the gate of that property because they believed that was where the sheep
lived. Ilkiw further testified that, later that morning, she had gone to the premises where the
sheep had reportedly been left, opened a gate to the property and went to the front door of the
home. After knocking on the front door and receiving no answer, she proceeded to search the
property for the injured sheep. As she proceeded further into the property, she found several
animals, including goats, that were in very bad condition. She did not see any food for the
animals, and there was only dirty green water available for the animals to drink. Behind a trailer,
[*2]she found the sheep that had been injured, but it was dead.
Later that day, she contacted investigator Eugene Hecht of the Hudson Valley Society for the
Prevention of Cruelty to Animals and informed him of the incident involving the injured sheep
and the conditions she had seen at the premises.
Hecht testified that, in response to the information given to him by Ilkiw on September 24,
2015, he went to the premises the following morning. Upon arriving at that location, he parked
his vehicle on the shoulder of State Route 416, and, when he exited his vehicle, he was able to
observe approximately 15 animals on the property and some of them appeared to be attempting
to stand but were unable to do so. He did not see any water or food for the animals. He entered
the property through an open gate and knocked on the front door of the house. While standing by
the front door, he could see different types of animals in several enclosures. Some of the animals
he observed were unable to stand. He wrote a comply order and taped it to the door of the barn
situated on the property. On September 25, 2015, an officer of the corporate landlord of the
premises gave written consent allowing Hecht to enter the property, although Hecht was
informed that the property was leased to defendant. He further testified that he returned to the
property later that same day with another individual who had expertise in and experience with
farm animals. They searched the property for an hour and fifteen minutes. They determined that
there was not enough food for the animals and discovered pigs in the barn lying in feces. On
October 1, 2015, he returned to the property and spent another half an hour walking around the
property.
Hecht testified that, on October 2, 2015, he had attempted to obtain a search warrant from
the Hamptonburgh Justice Court. However, he was told that one justice was out of town, and the
second justice told him that he could not help him because he was leaving town. Consequently,
Hecht obtained a search warrant from the Justice Court of the adjacent town, the Town of
Montgomery. Hecht testified that, on the morning of October 5, 2015, without executing the
search warrant, he returned to the property to conduct an inspection and, as a result, he
determined that the conditions had not changed. Later that day, he met with defendant and his
wife and told defendant what he had observed at the property and that the animals were not
properly being cared for. He told defendant that he had two choices: if he consented to surrender
the animals, he would not have to pay for their care, but if he chose not to surrender the animals,
he would be facing criminal charges and seizure of all the animals. Defendant admitted that the
animals were his and he consented to surrender the animals. The consent form defendant signed
was admitted into evidence. Hecht returned to the property a few more times before he served the
search warrant on October 10, 2015 and removed the animals from the property. The animals
taken by Hecht were found to be in poor health and malnourished. Many animals died as a result
of defendant's lack of care. Insofar as relevant to this appeal, the Justice Court, by order issued on
January 24, 2018, denied various branches of defendant's motion seeking to suppress certain
physical evidence and the statements defendant had made to law enforcement officers.
On April 25, 2018, without waiving his right to appeal, defendant pleaded guilty to one count
of animal cruelty (Agriculture and Markets Law § 353) in full satisfaction of the charges
and was sentenced to time served. This appeal ensued.
Contrary to defendant's contention, the Justice Court of the Town of Montgomery, located in
the same county and in an adjoining town to the Town of Hamptonburgh, was [*3]permitted to issue the search warrant, as the People sufficiently
demonstrated that the Justice Court of the Town of Hamptonburgh, having jurisdiction, was not
available to issue the warrant (see CPL 690.35 [2] [i]).
Defendant further contends that investigators unlawfully intruded onto his property and that
all the evidence seized by Hecht should have been suppressed.
The People argue that defendant's consent to turn over his animals was voluntary, as he was
not in custody either at the time he gave his written consent or when he made statements to
Hecht, nor was he coerced to give his written consent to turn over his animals. Furthermore,
Hecht merely advised defendant that if he did not surrender the animals, he could be held
financially liable for their care and that they could be seized without his consent. Consequently,
under the circumstances defendant was not denied due process.
"An illegal entry by the police requires the suppression of the fruits of an ensuing search
notwithstanding a voluntary consent, unless the consent attenuates the taint of the illegal entry"
(People v Sweat, 170 AD3d 1659, 1660 [2019]; see People v Packer, 49 AD3d
184, 187 [2008], affd 10 NY3d 915 [2008]). In determining whether a defendant's
consent is voluntary, the Court of Appeals, in People v Gonzalez (39 NY2d 122, 128-130
[1976]), held that a court should consider a variety of factors including whether the defendant is
in custody or under arrest, whether he knew he could refuse to consent, whether he had been
threatened or coerced, whether he had previously dealt with the police, and whether he acted in
any fashion suggesting non-cooperation (see People v Caldwell, 221 AD2d 972 [1995]).
"Of course, the relevant factors will vary from case to case and each case must be individually
considered on the particular facts and circumstances presented and the determination made with
due regard for the purposes sought to be served by the exclusionary rule" (People v
Borges, 69 NY2d 1031, 1033 [1987]).
"Consent to search is voluntary when it is a true act of the will, an unequivocal product of an
essentially free and unconstrained choice. Voluntariness is incompatible with official coercion,
actual or implicit, overt or subtle. . . . Where there is coercion there cannot be consent. No one
circumstance is determinative of the voluntariness of consent. Whether consent has been
voluntarily given or is only a yielding to overbearing official pressure must be determined from
the circumstances" (People v Gonzalez, 39 NY2d at 128 [internal quotation marks and
citations omitted]; see People v Abrams, 95 AD2d 155, 157 [1983]). Additionally, the
use of deception does not destroy the voluntariness of a consent per se unless the deception is so
fundamentally unfair as to deny due process (People v Abrams, 95 AD2d at
156-157).
The hearing evidence established that defendant voluntarily met Hecht at a local coffee shop
to discuss the matter and was not in custody or under arrest at the time he told Hecht that he
owned the animals and consented to seizure of the animals. Moreover, the hearing evidence
established that the statement and written consent, were obtained in a calm, non-coercive
atmosphere and that defendant was made aware that he had the right to refuse to consent.
Furthermore, under the circumstances, Hecht's explanation to defendant that criminal charges
would be brought against him cannot be considered overbearing official pressure, and it did not
undermine the voluntariness of the consent as it was neither deceptive nor coercive (see
People v Fagan, 134 AD3d 1232 [2015]; People v Yuruckso, 297 AD2d 299,
299-300 [2002]; cf. People v Driscoll, 87 AD2d 996 [1982]). Indeed, Hecht's explanation
to defendant was not a threat to arrest him, but a warning of a possible, less favorable, alternative
scenario of the likely future [*4]course of the investigation, and
Hecht had valid legal and factual grounds for making this statement (see People v
Yoneyama, 128 AD3d 616 [2015]; People v LaDuke, 206 AD2d 859 [1994]). While
the record is silent as to whether defendant had prior dealings with Hecht or the police, defendant
was a mature man and, significantly, fully cooperated with Hecht (see People v Gonzalez,
39 NY2d at 129-130).
We perceive no basis to disturb the suppression court's determination since defendant's
statement was not the result of a custodial interrogation (see People v Grant, 96 AD3d
779 [2012]) and his consent was an independent act of free will, sufficiently attenuated from the
taint of any prior allegedly illegal conduct (see People v Borges, 69 NY2d 1031).
Accordingly, the judgment of conviction is affirmed.
ADAMS and RUDERMAN, JJ., concur.
TOLBERT, J.P., taking no part.
ENTER:
Paul Kenny
Chief Clerk
Decision Date: December 24, 2020